■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT DAY and LEROY SCOTT, Appellants.—Consolidated

appeals (1), by the defendants Vincent Day and Leroy Scott from two judgments (one as to each of them) of the Supreme Court, Queens County (Farlo, J.), both rendered June 19, 1984, convicting Day of murder in the second degree, and convicting Scott of manslaughter in the first degree and robbery in the first degree under indictment No. 4117/83, upon their pleas of guilty, and imposing sentences, and (2) by the defendant Day from two judgments of the same court, both also rendered June 19, 1984, convicting him of criminal possession of a weapon in the third degree under indictment No. 3072/83 and criminal possession of stolen property in the first degree under indictment No. 2033/83, upon his pleas of guilty, and imposing sentences. The appeals under indictment No. 4117/83 bring up for review the denial, in part, after a hearing (Farlo, J.), of those branches of the defendants' omnibus motions which were to suppress statements made by them to law enforcement officials and identification testimony.

Ordered that the judgments are affirmed.

Shortly after midnight on November 3, 1983, the defendants Vincent Day and Leroy Scott, with a third companion, were driving through Jamaica Estates in Queens when they observed two students from Saint John's University, Elizabeth Connolly and Kathleen Habeeb, walking from their parked automobile to their apartment building. While one of the defendants relieved Elizabeth Connolly of her valuables at gunpoint, another pursued the fleeing Habeeb, stabbing her in the heart when she struggled. Money and jewelry were taken from the women, and the jewelry was pawned on the following day at a shop on Rockaway Boulevard in Queens.

On his appeal, the defendant Day asserts that his statements to the police, as well as the identification testimony of the complainant Elizabeth Connolly, should be suppressed because the police knew or should have known that he was represented by counsel in pending criminal proceedings. He also argues that his plea allocutions were insufficient, that his guilty pleas were not knowingly and intelligently made, that he did not receive the effective assistance of counsel, and that his sentences were excessive. His contentions are without merit.

Detective Richard Ladda of the Detective Bureau of the Queens Task Force obtained a copy of the defendant Day's arrest record and most recent arrest report at about noon on November 13, 1983. The detective testified that he had examined those records only for the names of possible "associates"

of the defendant Day, and, in any event, the records contained no information regarding the disposition of any prior charges against the defendant Day, or whether those cases were open or closed. At approximately 4:00 P.M., as Detective Ladda was going off duty, he left those records along with other material for Detective Walter Ratikan on a desk at the 107th Precinct. Detective Ladda did not indicate that he had spoken to Detective Ratikan concerning those records nor did he ever personally bring them to Detective Ratikan's attention. Therefore, there is no evidence in the record that Detective Ratikan had actual knowledge of the defendant Day's pending cases, or that he knew that the material obtained by Detective Ladda existed.

Detective Ratikan came on duty at 4:00 P.M. on November 13, 1983. Shortly after he arrived, he set out with other officers to tour the defendant Day's neighborhood, and kept watch while several plain-clothes detectives entered Day's home.

At between 10:30 and 11:00 P.M. on November 13, 1983, the defendant Day, accompanied by his mother and his stepfather, voluntarily appeared at the 107th Precinct. At approximately 11:55 P.M., Detective Ratikan read Day his *Miranda* rights, and Day made an inculpatory statement.

Under the circumstances of this case constructive knowledge may not be imputed to Detective Ratikan that Day was represented by counsel in pending criminal proceedings. In determining whether such knowledge may be imputed to law enforcement officials, the most salient factors customarily considered are the extent of the police's knowledge, the proximity, severity and notoriety of the prior charges, and the good or bad faith of the police *(People v Bertolo,* 65 NY2d 111; *People v Dubois,* 140 AD2d 619). As previously noted, there is no evidence that Detective Ratikan had any knowledge of the defendant Day's arrest record and most recent arrest report. Although the defendant Day's two open cases were recent felonies, neither was notorious, and neither had occurred in the 107th Precinct. Further, there is no evidence of bad faith on the part of the police, in view of the fact that the investigative effort was a massive cooperative venture, combining the resources of several precincts and task forces. Therefore, the hearing court properly refused to suppress a statement made by the defendant Day prior to his admission that there were criminal proceedings pending against him.

There is no reason to suppress the complainant Elizabeth Connolly's lineup or in-court identification of the defendant

Day in view of the fact that there is no evidence in the record warranting the conclusion that, under the totality of the circumstances, the lineup procedure was not reliable *(see, People v Reid,* 138 AD2d 642). Furthermore, it is apparent that any in-court identification of Day by the complainant would be based upon her independent observations of him during the commission of the crime *(see, People v Androvett,* 135 AD2d 640).

The defendant Day failed to object to the adequacy of his plea allocutions in the Supreme Court, Queens County. Therefore, issue of the adequacy of his plea allocutions is not preserved for appellate review *(People v Pellegrino,* 60 NY2d 636). In any event, there is no requirement that a Judge "specifically enumerate all the rights to which the defendant was entitled and to elicit from him * * * a list of detailed waivers before accepting the guilty plea" *(People v Harris,* 61 NY2d 9, 16). Further, under questioning by the court and the prosecutor, the requisite elements of the crimes to which Day pleaded guilty are clearly evident in his own recital of the events *(cf., People v Lee,* 90 AD2d 960). The record is clear that the court conducted entirely adequate and informative plea allocutions, and that the defendant Day knowingly, voluntarily and intelligently entered his pleas with the assistance of competent counsel *(see, People v Asencio,* 143 AD2d 917).

Thereafter, the defendant Day received the sentences that he bargained for and that his counsel requested be imposed. The sentences were not excessive *(see, People v Suitte,* 90 AD2d 80).

On his appeal, the defendant Scott contends that all of his statements should be suppressed either because he was arrested on the street without probable cause, or else because when he was arrested the police knew or should have known of criminal proceedings pending against him and that he was represented by counsel in those proceedings. The defendant Scott also submits that he was improperly deprived of exculpatory material to which he was entitled under *Brady v Maryland* (373 US 83) so that the pretrial hearings were unfair. Those contentions are also without merit.

It is apparent from the record that the defendant Scott was not under arrest when he was first stopped on the street, or later at the precinct when he was cooperating with the officers' investigation. The authority to stop persons on public streets is derived from CPL 140.50 and the common-law right

to inquire. Under CPL 140.50 (1) and (3), a police officer may stop a person in a public place if he has a reasonable suspicion that the individual is committing, has committed, or is about to commit a crime. In addition, the police may stop a person pursuant to the common-law right to inquire if there exists "a founded suspicion that criminal activity is present" *(People v De Bour,* 40 NY2d 210, 215). In the instant case, two detectives in a radio car had received a communication describing Scott, who had just been seen with two companions, as the individual who had sold the homicide victim's jewelry to a local shop some nine days before. The officers therefore had reasonable suspicion that Scott had committed a crime, and were justified in temporarily detaining Scott and his companions to the extent necessary to obtain explanatory information regarding their knowledge as to where and how the jewelry had been acquired *(see, People v Medina,* 107 AD2d 302). Scott agreed to accompany the police to the precinct to discuss the matter. From the record, it is apparent that he was neither handcuffed nor otherwise coerced to go.

The courts of this State have "rejected as standards for determining when a de facto arrest has taken place the wholly subjective belief of the officer, as well as that of the citizen" *(People v Hicks,* 68 NY2d 234, 240). The courts have looked instead to "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" *(People v Yukl,* 25 NY2d 585, 589). Among the factors taken into account when determining whether an individual has been in police custody are the amount of time spent with the police *(cf., People v Anderson,* 42 NY2d 35), whether he was physically restrained or his freedom was significantly restricted in any way *(People v Rodney P.,* 21 NY2d 1), the degree of cooperation he exhibited *(People v Torres,* 97 AD2d 802), the atmosphere in which he was questioned *(People v Yukl, supra),* and whether the questioning was investigatory or accusatory in nature *(People v Oates,* 104 AD2d 907; *People v Johnson,* 91 AD2d 327, *affd* 61 NY2d 932).

At the precinct, the defendant Scott was not physically restrained, spent time with his girlfriend, and was subjected to investigative rather than accusatory questioning. Scott had indicated his willingness to cooperate, since he had not done "anything wrong". Half an hour after his arrival, he made his first incriminating statement. It is apparent that a reasonable man, innocent of any crime, would not have perceived himself to be in custody at the time when he made his initial admissions. Further, since he was not yet in custody when he made

those admissions, there was no violation of his right to counsel under the rule enunciated in *People v Bartolomeo* (53 NY2d 225; *cf., People v Bertolo,* 65 NY2d 111, *supra; People v Rogers,* 48 NY2d 167).

In any event, there would be no reason to impute to the authorities knowledge that there were criminal proceedings pending against the defendant Scott and that he was represented by counsel in those proceedings, since the police were unaware of his actual surname until their questioning of him began. The only arrest record that they had for him at that time was a photograph of him in 1981 under the name of "Leroy White", which would not suffice to put the police on notice that there were criminal proceedings pending against him in November 1983.

By pleading guilty, the defendant Scott waived his contention that the prosecution failed to timely turn over certain *Brady* material to him. While not every claim is forfeited by a guilty plea, the plea does signal an agreement not to litigate the factual elements of the crime charged *(People v Taylor,* 65 NY2d 1). In the instant case, the items not produced by the prosecution—an incomplete composite sketch found unsatisfactory by the complainant, voluminous photographic displays in which none of the defendants was recognized by either of the witnesses, and documentation concerning an investigation of other suspects who had been cleared by the police—go to the issue of factual guilt, which, while appropriate for litigation at a trial, are waived by a plea of guilty.

We have examined the defendants' remaining contentions, including the contentions raised in the defendant Day's supplemental *pro se* brief, and find them to be without merit. Kunzeman, J. P., Rubin, Spatt and Balletta, JJ., concur.