OPINION OF THE COURT
Peter J. Benitez, J.
Defendant was originally charged with criminal possession of a controlled substance in the first degree, Penal Law § 220.21, a class A-l felony, in a felony complaint which alleged that he possessed a mixture of cocaine and other substances having an aggregate weight in excess of four *178 ounces. After plea discussions between the special narcotics prosecutor and defense counsel the People agreed to dismiss the charge of Penal Law § 220.21 and add a charge of criminal possession of a controlled substance in the third degree, Penal Law § 221.16, a class B felony. Defendant then waived prosecution by indictment, agreed to be charged with that B felony in a superior court information and, in Part N on February 25, 1994, pleaded guilty to criminal possession of a controlled substance in the third degree with a promise that he would receive an indeterminate sentence with a maximum not to exceed three years and a minimum of one year.
Thereafter, prior to sentence, defendant moved to withdraw his plea of guilty. Defendant’s motion alleged that subsequent to his plea, counsel learned through newspaper articles that the arresting officer who recovered the contraband from defendant’s vehicle had been sanctioned administratively by the police department as a part of the ongoing investigation by the department and the Mayoral Mollen Commission into allegations of misconduct by officers assigned to the 30th Precinct, the arresting officer’s precinct. No further details have been provided by either defense counsel or the Assistant District Attorney as to the basis for the administrative action taken against the officer.
Defendant’s counsel asserts that a principal factor in defendant’s decision to plead guilty was an assessment of the likelihood that the People would prevail on a motion to suppress. Counsel further asserts that had he known that the arresting officer was the subject on the ongoing investigation he would have recommended against entering a plea of guilty and that defendant tells him that he would have followed counsel’s advice and rejected the plea offer.
Defendant’s initial motion papers simply asserted that information about the officer’s being the subject of an investigation should have been disclosed to defense counsel prior to the entry of defendant’s guilty plea and that defendant was denied effective assistance of counsel by reason of counsel not being provided with this information. The People responded to defendant’s motion by affirmation asserting that the first arrests of officers who were the subject of the 30th Precinct investigation did not occur until April 14, 1994 and the arresting officer in this case was not subjected to administrative action until May 4, 1994, both events well after defendant’s plea. The People further state that they were unaware *179 of any wrongdoing on the part of that officer as of the date defendant entered his plea.
Defendant replied to the People’s response by asserting that the prosecutor "knew or should have known” of the misconduct by the officer which resulted in his discipline at the time of defendant’s arrest, February 5, 1994. The basis for the assertion is the widespread notoriety that surrounded the Mollen Commission’s investigation of officers in the 30th Precinct which began in 1992 and produced public hearings in 1993. While acknowledging in a footnote that he does not know what information was actually possessed by the prosecutor in February, defense counsel, in the body of his reply, now contends that the prosecutor should be charged with knowledge of any information about the officer possessed by the Mollen Commission. Accordingly, defendant asserts that the prosecutor violated his obligation to disclose exculpatory material.
The People further responded by affirmation to defendant’s reply by asserting again that neither the assigned Assistant District Attorney nor any other member of the office of the special narcotics prosecutor knew when defendant entered his plea that the officer in question was the subject of an investigation. The People further assert that even had they known of information about the investigation of the officer, such information would have at most constituted impeachment material relevant to the factual issues to be litigated at trial and defendant waived his right to litigate those issues by pleading guilty.
New York’s highest court has never considered the question of whether a defendant waives the claim that the prosecutor has failed to disclose exculpatory material where defendant raises that claim after a plea of guilty. In People v Jones (44 NY2d 76 [1978], cert denied 439 US 846), the Court found it unnecessary to decide this question when it held that defendant was not denied due process where the prosecutor failed to disclose prior to defendant’s plea that the victim of the crime had died. The Court held that such information was "nonevidentiary information” which may have had a bearing on defendant’s tactical decision as to whether to proceed to trial, but was not exculpatory material within the doctrine of Brady v Maryland (373 US 83). (People v Jones, supra, at 79-81.) The Court noted, in a footnote, that it was not expressing a view on what remedy would be appropriate had the prosecutor failed to disclose exculpatory evidence, but suggested *180 that the appropriate remedy "might be limited to disciplinary proceedings.” (People v Jones, supra, at 82, n.)
The Appellate Division, Second and Third Departments, however, have reached conflicting conclusions as to whether a defendant waives claims that a prosecutor failed to disclose exculpatory material when pleading guilty. In People v Day (150 AD2d 595 [2d Dept 1989]), the Court held that, by pleading guilty, defendant waived his contention that the prosecutor failed to turn over exculpatory material prior to the plea. The Court held that "the plea does signal an agreement not to litigate the factual elements of the crime charged” and the materials not disclosed by the prosecution "go to the issue of factual guilt, which, while appropriate for litigation at a trial, are waived by a plea of guilty.” (People v Day, supra, at 600; accord, People v Thompson, 174 AD2d 702 [2d Dept 1991].)
The Third Department, on the other hand, has expressed the view a claim of a violation of "Brady rights” is not waived by a plea of guilty. See People v Armer (119 AD2d 930, 932 [3d Dept 1986]) where the Court, while denying defendant’s motion to withdraw his plea, held that a defendant must be permitted to withdraw his plea if the prosecutor failed to disclose exculpatory material and if there is a reasonable probability that defendant would not have pleaded guilty had the material been disclosed. See also People v Ortiz (127 AD2d 305, 308 [3d Dept 1987], Iv denied 70 NY2d 652) where the Court denied defendant’s claim, but stated, "based on the analysis set forth by the Court of Appeals in People v Pelchat (62 NY2d 97, 108), a claim of a violation of Brady rights should not be deemed waived by a guilty plea.” (People v Ortiz, supra, at 308.) The Court’s reference to People v Pelchat, however, does not provide authority for the Court’s dicta, as the Court of Appeals, in People v Pelchat (supra), had held that a plea may be vacated where the indictment was based on false testimony and this fact was known to the prosecutor. The Court specifically found it unnecessary to address the Brady issue raised by the claim that the prosecutor failed to disclose that the witness had recanted his Grand Jury testimony. (See, People v Pelchat, supra, at 309.)
Accordingly, there is a split in the positions of the Appellate Divisions which have considered the question presented here and the Court of Appeals has not addressed the question. Federal courts, however, have specifically ruled on this issue. In Miller v Angliker (848 F2d 1312 [2d Cir 1988], cert denied *181 488 US 890), the Court held that a plea may be vacated if the prosecutor has failed to disclose exculpatory material which is required to be disclosed and if there is a reasonable probability that either counsel would have recommended against the plea or defendant would, irregardless of counsel’s recommendation, not have entered the plea of guilty had the material been disclosed. (Accord, Tate v Wood, 963 F2d 20 [2d Cir 1992].)
The rationale of these Federal decisions is that when a defendant admits guilt and pleads guilty the defendant has given up the right to put the prosecution to the burden of proving guilt. Due process requires that a waiver of that right to proceed to trial can only be validly obtained where the prosecution has disclosed exculpatory material required to be disclosed so that defendant and counsel can make an informed decision as to their estimate of whether the prosecution will likely prevail at trial. It is one thing for defendant and counsel to miscalculate the nature and persuasiveness of the prosecution’s case. It is another for defendant and counsel to act without the benefit of information which is required to have been disclosed. Accordingly, those New York appellate decisions that hold that a defendant, having admitted guilt, cannot thereafter complain that he/she was denied exculpatory material because that material bears on an issue, factual guilt, that has been removed by defendant’s admission of guilt, fail to consider the due process requirements for securing that decision by a defendant not to litigate the issue of factual guilt.
This court, therefore, agrees with Miller v Angliker (supra) and holds that, if a prosecutor has failed to disclose exculpatory material required to be disclosed to a defendant, a defendant who pleads guilty may have his/her plea set aside if the court determines that the information would have materially affected defendant’s decision to plead guilty. Materiality in this context is a showing that there is a reasonable probability that had the exculpatory material been disclosed as required, defendant’s attorney would have recommended against a plea or defendant, notwithstanding counsel’s advice, would have insisted on proceeding to trial.
In order to determine whether a basis exists for defendant here to withdraw his plea, the court must first determine whether a violation of defendant’s right to disclosure of exculpatory material has occurred and only if that question is determined in the affirmative must the court further deter *182 mine whether there is a reasonable probability that had such information been disclosed it would have been material to defendant’s and counsel’s decision to enter a plea of guilty.
As noted earlier, defendant asserts that the prosecution possessed information about the arresting officer being the subject of an investigation of police misconduct at the time defendant pleaded guilty. Defendant also asserts that, even in the absence of the prosecutor’s possession of such information, if an independent Mayoral investigative commission, the Mollen Commission, or police department personnel cooperating with the Mollen Commission possessed that information it must be considered to be information which the prosecution was required to seek out and disclose prior to defendant’s plea.
Brady v Maryland (supra) requires that prosecutors disclose exculpatory evidence in their possession or under their control. (See, People v Vilardi, 76 NY2d 67 [1990]; People v Stanard, 42 NY2d 74 [1977]; People v Simmons, 36 NY2d 126 [1975].) There is little discussion in appellate decisions by New York’s courts as to the scope of the concept "possession or control” as it relates to Brady material. Most New York appellate decisions on the issue turn on whether the prosecution had actual possession of the material. (See, e.g., People v Johnson, 195 AD2d 481 [2d Dept 1993] [memo books of private security guards]; People v Rodriguez, 155 AD2d 257 [1st Dept 1989] [Federal investigative files].) A somewhat parallel concept of possession and control as it relates to prior statements of witnesses, Rosario material, has been the subject of more extensive consideration by New York courts. Recently, the Appellate Division in the First and Second Departments reached differing conclusions as to whether statements of a police officer to defendant’s parole officer constitute Rosario material required to be provided to defendant. (See, People v Fields, 146 AD2d 505 [1st Dept 1989]; People v Kelly, 209 AD2d 436 [2d Dept 1994].) The First Department held the statements to be Rosario under the facts of its case while the Second Department found such statements not to be Rosario material. It should be noted that a controlling fact in People v Fields (supra) was that the prosecutor was aware of the statements of its witness to the parole officer and had requested but not received the statements. (See, People v Kelly, supra [where the Court noted this distinction between its case and People v Fields, supra].)
Opinions of Federal courts provide guidance as to the cir *183 cumstances under which exculpatory material can be said to be in the possession or control of the prosecution. Those decisions have noted that the question is easily answered when the prosecutor handling defendant’s case is aware of or actually possesses the material. Those decisions make it clear, however, that material not known to or actually possessed by the prosecutor nevertheless may, under certain circumstances, be said to be in the prosecutor’s control. In United States v Joseph (996 F2d 36, 39 [3d Cir 1993], cert denied — US —, 114 S Ct 357) the court stated: "In Perdomo, we held that 'the prosecution is obligated to produce certain evidence actually or constructively in its possession or accessible to it.’ 929 F.2d at 970. We construe the term 'constructive possession’ to mean that although a prosecutor has no actual knowledge, he should nevertheless have known that the material at issue was in existence.”
Where the exculpatory material is in the files of the law enforcement agency which was involved in the investigation which resulted in the criminal charges against the defendant and it is the files of that or a related investigation, the prosecution can be charged with constructive possession and control of that material. This principle is based on the simple premise that the law enforcement agency which participates in the investigation which results in criminal charges should disclose to the prosecutor handling the prosecution all the material it possesses, particularly exculpatory material. Similarly, the prosecution should ask the investigative agency if it possesses exculpatory material as the investigative agency continues to be a partner of the prosecution in the subsequent prosecution of the case. (See, United States ex rel. Smith v Fairman, 769 F2d 386, 391 [7th Cir 1985] [where the court expressed this concept as one requiring the prosecution to search the files of law enforcement agencies "closely aligned with the prosecution.”])
A more difficult question arises where the exculpatory material is generated or possessed by a law enforcement agency as a result of that agency’s investigation of another matter, whether it be the same agency which was involved in the investigation leading to the prosecution of the defendant or by a different law enforcement agency. The Federal courts which have considered this question have consistently held that the duty of the prosecutor to inspect the files of or inquire of other law enforcement agencies in search of exculpatory material turns on whether that duty has been "triggered” by a request *184 of the defendant for such material. (See, United States v Brooks, 966 F2d 1500 [DC Cir], and United States v Joseph, supra, and cases cited in those opns.)
In United States v Joseph (supra) the issue was whether the prosecutor should have searched in files of the prosecutor’s office which files related to an investigation different from that which resulted in defendant’s arrest for information of the kind requested by defendant’s attorney. The court held, "we hold that where a prosecutor has no actual knowledge or cause to know of the existence of Brady material in a file unrelated to the case under prosecution, a defendant, in order to trigger an examination of such unrelated files, must make a specific request for that information — specific in the sense that it explicitly identifies the desired material and is objectively limited in scope.” (United States v Joseph, supra, at 41.)
This requirement of a specific request for exculpatory material is distinguishable from the issue of what the standard is on appeal where a defendant seeks reversal of a conviction based on the People’s failure to disclose exculpatory evidence. Where the People have a duty to seek out that material and disclose it, based on actual or constructive possession of the material, the New York Court of Appeals has held that the conviction must be reversed if (a) defendant made a specific request for the material and there is a reasonable possibility that the failure to disclose the exculpatory material contributed to the verdict or (b) defendant did not make any request for exculpatory material or only a general request for such and there is a reasonable probability that the failure to disclose the exculpatory material contributed to the verdict (People v Vilardi, 76 NY2d 67 [1990], supra.) The fact that New York recognizes that a Brady violation may occur even where no request for exculpatory material or only a general request for such has been made does not imply or create a rule of law that the prosecution is charged with a failure to produce exculpatory material whenever such material exists and is not disclosed. Rather, it must first be determined whether the prosecution was required to search for and disclose the material in question which may, as set forth above, require that the prosecutor’s duty to seek the material has been triggered by a specific request for exculpatory material of a specified nature.
Applying the principles set forth above to this case, it should be noted that defendant never, before pleading guilty, requested exculpatory material from the prosecution. Addi *185 tionally, defendant does not contend that information of a potentially exculpatory nature, acts of possible misconduct by the arresting officer, was generated, developed or possessed by law enforcement agencies in connection with the investigation that resulted in defendant’s arrest and prosecution. Therefore, as a matter of law, this court holds that the prosecution was not required to search for or otherwise seek out information about the arresting officer which was in the possession of the Mollen Commission or police department. The only basis, therefore, on which defendant could prevail on his claim that the potentially exculpatory information was in the possession or control of the prosecution and not disclosed is if the prosecutor’s office knew of or actually possessed information about possible acts of misconduct by the arresting officer at the time defendant pleaded guilty.
As noted earlier, the prosecutor handling the prosecution of this case has twice, by affirmation, denied that he or any member of his office knew of or possessed information that the arresting officer had been accused of or committed acts of misconduct. Defense counsel has acknowledged that he does not know what information was actually possessed by the prosecutor or his office. The only basis on which defense counsel asserts that the prosecutor did know of the information is the conjecture that the "scope, severity and targets of the Mollen Commission investigation provides a reliable basis to conclude that the prosecutor’s office knew or should have known about the Brady material.” This assertion is insufficient to constitute an assertion of fact based upon information and belief that would warrant this court ordering an evidentiary hearing on whether the prosecutor’s office had actual knowledge of any investigation of the arresting officer being conducted by the Mollen Commission. Defense counsel has set forth no basis to believe that the Mollen Commission disclosed the identities of the targets of its investigation or specific allegations being investigated beyond that which was disclosed during the public hearings and in the written report of the Commission. Defense counsel has pointed to nothing in those public disclosures which would suggest that information was disclosed to the special narcotics prosecutor’s office while that office was prosecuting cases that may have involved officers under investigation by the Commission. Accordingly, defendant’s assertions that the prosecutor knew of or possessed the information which he asserts should have been disclosed is mere conjecture and does not create an issue of fact requiring *186 a hearing. Accordingly, defendant has failed to show that the prosecutor failed to disclose exculpatory material required to have been disclosed.
Defendant’s alternative request for relief, that the court should consider the information about the administrative action taken against the arresting officer as newly discovered evidence and permit him to withdraw his plea is rejected. (See, People v Jones, supra.)
Wherefore, defendant’s motion to withdraw his plea is denied.