[669 NYS2d 268]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARD-LIN MARTIN, Appellant.

First Department, February 10, 1998

## APPEARANCES OF COUNSEL

*Karan B. Aronskind* for appellant.

*Robert F. Petrone* of counsel *(Stanley R. Kaplan* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

## OPINION OF THE COURT

Tom, J.

The narrow issue under review concerns the propriety of the trial court's exercise of discretion in denying defendant's presentence motion to withdraw his guilty plea based on recently discovered, purportedly exculpatory, information that the arresting officers were the subject of a departmental investigation involving corrupt activities.

Police Officers Dwayne Townsend and Rich Rivera testified at the suppression hearing. While responding to a complaint of a disorderly crowd, the officers saw defendant conversing with a woman in the location specified in the complaint. The officers knew this to be a drug-prone location in which weapons were often present and knew, in fact, that an undercover officer previously had been shot nearby. When defendant turned toward the officers, the officers saw the glint of metal tucked in defendant's waistband. Defendant started to run as the police called him over. The officers gave chase, during which defendant, when pushed to the ground, extracted a stainless steel .357 magnum handgun and aimed it at Rivera's head. After a brief struggle, defendant was disarmed and arrested. During the ride to the precinct, defendant stated that he had been trying to sell the gun to someone in the building to buy crack, and that the officers would have been "justified in shooting him and thank God [they] were veterans because if [they] were rookies he would have been shot." None of the officers had asked the defendant any questions or conversed with him when this statement was made.

In seeking suppression, defense counsel argued the lack of reasonable suspicion for the initial stop, claiming that defendant neither had displayed a gun nor had acted aggressively toward the officers and that there were no other indications of

criminality. In his *pro se* memorandum, defendant claimed essentially that he had had the right to walk, or even run, away, and that the attempted stop precipitating his flight was not justified by the officers' fears for their safety. The motion court found the initial stop and subsequent pursuit to have been unjustified, and that based upon defendant's conduct the officers had only a common-law right of inquiry. However, the court found defendant's act of extracting and aiming the handgun at Officer Rivera to attenuate the illegality and to provide a viable predicate for defendant's arrest. The court also found the defendant's statement to have been spontaneous and voluntary.

Defendant entered a plea arrangement with the District Attorney. Prior to the plea proceeding, defendant had admitted at a parole revocation hearing that he had possessed the gun.

At the plea proceeding, defendant allocuted to the basic facts alleged in the information. Defendant stated in open court that "I never denied possessing the weapon, your honor." He also acknowledged waiver of his right to go to trial, waived his right to move to dismiss, waived his right to appeal denial of pretrial motions to dismiss or suppress and acknowledged that he would not be able to withdraw his plea of guilty. The court then accepted defendant's plea.

Defendant subsequently moved to withdraw his guilty plea and reopen the *Mapp* hearing based on newly discovered evidence, consisting of a newspaper article that stated that the arresting officers were targets of a corruption probe in their Bronx precinct. Apparently, around the time of the plea proceeding, Officers Rivera and Townsend were the subject of a Police Department investigation into police corruption in their precinct. After Townsend was caught taking money from a car utilized in a sting operation, he was placed on desk duty, and eventually he was indicted. In response to the *Brady* claim, the trial prosecutor specifically denied any personal knowledge of the corruption probe, and affirmed that as of the current date, the District Attorney's office was unaware of any misconduct by the officers. The prosecutor further stated that at most, at some time prior to the plea, the District Attorney's office received an unsubstantiated rumor, stated by another officer, that Rivera was "up to his old tricks." The motion court denied defendant's motion.

Defendant was convicted, pursuant to his guilty plea, of criminal possession of a weapon in the third degree. At the sentencing proceeding, he was adjudicated a persistent felony offender

and received the promised sentence of six years to life in lieu of a potential sentence of 25 years to life. Prior to defendant's sentencing, the officers had been indicted for perjury and larceny-related offenses arising out of shakedowns and thefts from drug dealers.

This appeal brings up for review denial, after a hearing, of defendant's motion to suppress physical evidence and statements, as well as denial of his motion to vacate his plea and to reopen the hearing.

Initially, a decision to vacate a plea rests in the sound discretion of the motion court, subject only to an abuse-of-discretion standard, determined on a case-by-case basis (*People v Fiumefreddo*, 82 NY2d 536, 543; *People v Gonzalez*, 185 AD2d 159, *lv denied* 80 NY2d 904; *People v Patrick*, 163 AD2d 84, *lv denied* 76 NY2d 895). It is well settled that a guilty plea will be upheld if it was entered knowingly, voluntarily and with an understanding of the consequences thereof (*North Carolina v Alford*, 400 US 25; *People v Moissett*, 76 NY2d 909, 910-911), especially when the defendant makes a complete factual allocution in the presence of counsel and after the court apprised the defendant of the consequences of his plea (*People v Thompson*, 174 AD2d 702, *lv denied* 79 NY2d 833), reflecting, we have noted, the judicial interest in conferring finality on plea negotiations (*People v Patrick, supra*).

A prosecutor's inadvertent or negligent failure to disclose exculpatory material in his control (*Giglio v United States*, 405 US 150, 153-154; *Brady v Maryland*, 373 US 83, 87; *People v Savvides*, 1 NY2d 554, 556) has long been seen as conflicting with "considerations of elemental fairness * * * and * * * professional responsibility" (*People v Simmons*, 36 NY2d 126, 131), which may deny the defendant due process when the nondisclosure of even unrequested exculpatory evidence is "highly material" to the defense (*supra,* at 132). Although the obligation is termed an "ongoing" one, there is a countervailing judicial interest in the finality achieved by a lawful plea. Our concern, upon which the dissent principally relies, is that a plea might not be knowing and intelligent under circumstances where information pointing to the defendant's innocence is in the possession of the prosecutor, but is not disclosed to the defendant.

Defendant's appellate position effectively asks us to construct a rule of law that preplea *Brady* violations, not known to a defendant at the time of the plea, require per se vacatur of the plea. However, that result would be contrary to prevailing

authority. Rather, vacatur will not result from a later-raised *Brady* violation when the information purportedly undisclosed goes to the issue of factual guilt (*People v Day*, 150 AD2d 595, 600, *lv denied* 74 NY2d 807) established here in the factual allocution. Postconviction *Brady* claims usually are denied unless the putatively exculpatory information was "highly material to the defense" (*People v Simmons*, 36 NY2d 126, 132), thus depriving the defendant of an opportunity to cross-examine a witness on a trial issue, and depriving the defendant of due process. The better policy is to determine vacatur on *Brady* grounds case by case.

Here, three factors should be considered in evaluating whether there was a *Brady* violation arising from failure to disclose the departmental investigation: was the information truly exculpatory; was it in the People's control; and, if so, how should a reviewing court balance the defendant's right to cross-examine an adverse witness regarding evidence material to the issue of guilt or innocence against a countervailing public interest (*see, People v Ortiz*, 127 AD2d 305), such as the confidentiality of the investigation.

For the first inquiry, the exculpatory value of the undisclosed information has been equated with materiality, in that if disclosed, it would have materially affected a defendant's decision to plead guilty rather than to proceed to trial (*People v Benard*, 163 Misc 2d 176; *cf., People v Wright,* 86 NY2d 591), a criterion that we find to be useful in this case. Even when undisclosed information might have had a bearing on a defendant's tactical decision whether to forgo trial, if it is nonevidentiary, nondisclosure does not deprive the defendant of due process (*People v Jones*, 44 NY2d 76, *cert denied* 439 US 846 [prosecutor failed to disclose at time of plea that victim had died; not a *Brady* issue]). Since a departmental investigation into the arresting officer's alleged venality bore no direct relation to the question whether that officer saw defendant display a gun (*cf., People v Curry*, 164 Misc 2d 969; *People v Marzed*, 161 Misc 2d 309), we cannot see how disclosure in this case would have reasonably affected the plea process (*accord, People v Benard, supra; compare with, People v Marzed, supra*). Nor would the mere general impeachment value of the evidence require vacatur when the officers were not the sole source of the evidence establishing defendant's guilt (*cf., People v Marzed, supra*).

An analysis of the facts in this case reveals that the nature of the newly discovered information bears no sufficient nexus

to defendant or to the charged offense or, for that matter, to the officers' testimony, to constitute exculpatory material in a *Brady* sense. The critical fact upon which we focus is that defendant was stopped and subsequently arrested for display of a handgun. Insofar as is relevant to this appeal, defendant did not allege that he had been "shaken down" by the arresting officers, or that he had even possessed cash or drugs that might have drawn the attentions of larcenous rogue officers. Rather, the stop was happenstance but routine, and the only issue regarding the officers' credibility was whether, when giving chase, they had seen defendant display a gun. Notably, the officers were not being investigated for having planted a gun on a suspect to justify an arrest. The undisclosed information goes only to the officers' general credibility in a manner connected to the defendant's factual guilt only in the most tangential manner. Moreover, these officers' testimony was not the only evidence establishing defendant's possession of a handgun. Defendant's own admissions of guilt during the different stages of the criminal proceeding would be unaffected in their evidentiary value by impeachment of the officers on a collateral matter. The factual allocution of the plea proceeding accords with the voluntary statement defendant provided upon his arrest as well as his admission in open court and during his parole revocation hearing that he had, in fact, possessed the gun.

The dissent characterizes defendant's voluntary admission at the preplea parole revocation hearing as being "completely derived" from the search. We would characterize the issue differently. Defendant's voluntary admissions, before a separate tribunal utilizing different standards of proof (*People ex rel. Singletary v Dalsheim*, 84 AD2d 553 [2d Dept 1981], *lv denied* 55 NY2d 603 [parole revocation unaffected by acquittal in judicial proceeding]; *see also, People v Powell*, 209 AD2d 645 [2d Dept 1994], *lv denied* 85 NY2d 865 [probation revocation relies on standards different from prosecution]), were not derived from, but exist in addition to, the officers' testimony, despite the common circumstance giving rise to both bodies of evidence. The voluntariness of defendant's statement—so far unchallenged—at the parole revocation hearing is not vitiated by the nature of the seizure. The rules and policy considerations for the different proceedings are different. Hence, defendant's admission thereat is independent of any claim concerning the credibility of the officers raised in connection with the *Mapp* hearing. The conclusion, then, is compelled that defendant's unchallenged admission at the parole revocation proceeding is

inculpatory evidence for purposes of the criminal proceeding in addition to the officers' testimony, and that the value of the admission would remain unaffected by a general impeachment of the officers' credibility by the putative *Brady* material in this case.

Defendant also argues his innocence on appeal, but bare assertions of innocence are an insufficient basis to vacate a plea (*People v Carreras*, 209 AD2d 350) especially when the defendant fails to retract inculpatory admissions (*People v Fiumefreddo*, 82 NY2d 536, *supra*).

*People v Wright* (86 NY2d 591, *supra*), relied on by the dissent, does not require a different result. In *Wright*, the issue presented was whether the People's failure to disclose to defendant that the complainant in an assault case was a police informant constituted a *Brady* violation. The complainant claimed that the female defendant had assaulted him with a knife in defendant's apartment, while defendant asserted that she stabbed complainant because she feared that she was about to be raped. The outcome of the case turned on which person provided accurate information about the sequence and location of events. Responding police officers, initially recording a statement lending support to the defendant's claims, gave different testimony at trial now favoring the complainant. If the defendant had known of the relationship between the complainant and the Police Department, she could have sought to provide a motive for the discrepancy. Under those circumstances, given the likelihood of police bias in favor of a registered informant, and the peculiar nature of the testimony, pretrial disclosure of the complainant's close relationship with the Police Department took on exculpatory dimensions. That situation clearly is distinguishable from the instant case.

Nor do we read *People v Baxley* (84 NY2d 208) as broadly as does the dissent to require vacatur. Although *Baxley* in general alludes to the exculpatory potential of information impeaching a prosecution witness, the specific context of that ruling qualifies the general principle and does not compel vacatur in this case. In *Baxley*, the defendant was tried for a robbery murder on information supplied by several of his acquaintances. One acquaintance eventually recanted and consequently did not testify at trial; the recantation was not exculpatory. However, when this person informed the prosecutor prior to trial that police had induced his false statement as well as that of a trial witness by promises of leniency, *Brady* was triggered. This information, by which the trial witness could have been specifi-

cally impeached on a crucial matter going to guilt or innocence, should have been disclosed. In the present case, any impeachment value of the subject information still remains collateral to the trial issues.

Regarding the inquiry into whether the District Attorney controlled the information about the officers' misconduct, it was not generated by the District Attorney's office, but by the Police Department in an investigation unrelated to the defendant's arrest. Contrary to the dissent, we find no reason in the record to conclude that the Police Department had conveyed to the prosecutor the target or results of an internal investigation prior to the time of the plea. During the relevant time period, knowledge of the internal investigation apparently was cloistered in the Department's Internal Affairs Bureau. The initial investigation had been conducted undercover, during a time period that correlates with the time of the plea proceeding. Its results, in view of the ongoing nature of the probe, were not publicly disseminated, notwithstanding a leak to the press after the plea but before the sentence. The prosecutor's affirmation, which remains uncontroverted in any substantive manner, attests that the District Attorney's office had not been apprised of the departmental investigation until such time as the matter appeared before the Grand Jury. Hence, the District Attorney did not possess the information which defendant contends should have been disclosed prior to his plea (see, *People v Benard*, *supra*; *People v Chapman*, Sup Ct, NY County 1995, index No. 13641/92).

Although under compelling circumstances, information possessed by another agency may be imputed to an unknowing prosecutor (see, e.g., *People v Wright*, *supra*), we do not find a sound basis in this case to impute possession of the information to the District Attorney (*People v Chapman*, *supra*; cf., *People v Curry*, *supra*). *Brady's* affirmative obligations do not, *carte blanche*, extend to require prosecutorial inquiry of other law enforcement agencies into any and all information about a police officer which "may or may not prove to be exculpatory" (*People v Coleman*, 75 Misc 2d 1090, 1095). In *Wright*, the inquiry would have been whether the complainant was a person known to the police; the event triggering a need for further inquiry by the prosecutor would have been the discrepancy in police statements, information available to the prosecutor. In the present case, the off-hand ambiguous remark that a prosecutor might have heard that Officer Rivera was "up to his old tricks," which, in any event, constitutes only hearsay (see, *People v*

*Hentley*, 155 AD2d 392, *lv denied* 75 NY2d 919), has no persuasive value to the contrary. The logic of the broad responsibilities that the dissent would impose on prosecutors would require constant mini-investigations of testifying officers, often entailing inquiry into confidential departmental files in order to immunize convictions from reversal on serendipitous *Brady* grounds.

Finally, even if the information had been requested by the prosecutor for subsequent disclosure to the defendant, it is not clear that it would have been provided by the Police Department. The record indicates that, prior to the plea, this was an internal, undercover and ongoing departmental probe of a precinct, which ensnared these officers among others. It was unrelated to the defendant's arrest and, pending the filing of charges, essentially of a confidential nature (*see, People v Coleman*, 75 Misc 2d 1090, 1092, *supra* [defendant sought to subpoena police personnel records regarding arresting officer on basis that possible investigations were relevant to the officer's credibility; not relevant to charges; at best, defendant was merely "foraging for evidence"]; *accord, People v Lugo*, 93 Misc 2d 195; *People v Norman*, 76 Misc 2d 644; *but see, People v Sumpter*, 75 Misc 2d 55).

Since we conclude that no *Brady* material was in issue in this case, we need not resolve the issue of whether defendant's guilty plea waived a subsequent claim of a *Brady* violation. However, we decline to adopt a per se rule and would prefer to treat each case ad hoc, and we would scrutinize any claims of waiver as to genuine knowledgeability and voluntariness.

We have considered defendant's remaining contentions and find them to be meritless.

Accordingly, the judgment of the Supreme Court, Bronx County (Irene Duffy, J.), rendered June 9, 1995, which convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree, and sentenced him, as a persistent felony offender, to a term of six years to life, should be affirmed.

ROSENBERGER, J. P. (dissenting). The defendant's guilty plea should be vacated and the matter remanded for a new *Mapp* hearing, on the ground that the People failed to disclose *Brady* material to the defendant prior to his decision to plead guilty.

At the *Mapp/Huntley* hearing, the sole witnesses were Officers Dwayne Townsend and Rich Rivera, who testified that at

1:10 A.M. on January 21, 1993, they received a tip concerning disorderly conduct in a building at 1975 Bathgate Avenue (a known drug neighborhood). The officers saw the defendant outside the building talking to a woman. Officer Townsend noticed an unidentified metal object in the defendant's waistband, bigger than a paper clip but smaller than a police badge. When Officer Townsend asked the defendant to come towards him, the defendant ran away. The officers chased him for two blocks. During the chase, the defendant fell twice, but got up again. When he fell the third time, Officer Rivera jumped on him.

The officers testified that the defendant then pulled out a gun and pointed it at Officer Rivera. However, the defendant has consistently denied pointing the gun at the officers.

After observing the gun, the officers disarmed the defendant and arrested him. On the drive to the precinct, the defendant allegedly said that he was not trying to shoot them and that he had intended to sell the gun to someone in the building because he needed money for drugs.

On May 26, 1994, the court ruled that the initial pursuit was unjustified, but denied suppression on the grounds that the defendant's act of pointing the gun at Officer Rivera was an independent act that attenuated the illegality of the seizure. The court obviously credited the officers' version of events concerning their discovery of the gun. Having found that the police had probable cause to arrest when the defendant allegedly pointed the gun at them, the court determined that the defendant's statement was spontaneous and voluntary. Thus, the admissibility of all of the material evidence against the defendant depended on the officers' credibility.

On June 30, 1994, defense counsel informed the court that as a result of the suppression ruling, the defendant would plead guilty to criminal possession of a weapon in the third degree, in exchange for a term of six years to life. At the plea hearing, the defendant admitted possessing the weapon, but asserted that he never pointed the gun at Officer Rivera.

On March 15, 1995, the defendant's new counsel moved to withdraw the plea and reopen the *Mapp* hearing, on the basis of a New York Post article that allegedly indicated that the People had not complied with their obligation to furnish exculpatory material in their possession (*Brady v Maryland*, 373 US 83).

The article in question stated that Officers Townsend and Rivera had been placed on modified assignment due to

misconduct (Officer Townsend stole $210 from an alleged drug dealer's car; no details on Officer Rivera). The article went on to say that the officers had been the subjects of a police corruption probe by the Police Department's Internal Affairs Bureau for a year, and that allegations of their corruption went back as far as two years.

According to defense counsel, this article showed that prior to the defendant's guilty plea, the People had actual or imputed knowledge that Officers Townsend and Rivera were being investigated for corrupt activities, some of which dated back to the time of the defendant's arrest. Defense counsel further argued that had the defendant possessed this information at the time of the suppression hearing, he could have undermined their credibility and suggested a motive for them to lie. This, in turn, could have convinced the court that the defendant had not committed the intervening act (pointing the gun at the officers) that supposedly attenuated the taint of the illegal pursuit. Without the evidence resulting from this pursuit, the indictment would have been dismissed.

By opposing affidavit dated May 3, 1995, the Assistant District Attorney (ADA) who conducted the suppression hearing stated that at the time of the plea, he and his office were unaware of any allegation or evidence of misconduct by the officers. However, prior to the plea, he had heard a rumor that another officer had said that Officer Rivera was "up to his old tricks," i.e., improper activity. The ADA claimed that this did not amount to *Brady* material, and that in any event the *Brady* claim was waived by the defendant's guilty plea.

On that same date, Officer Townsend was indicted by a Bronx County Grand Jury on charges of larceny in the fourth degree, official misconduct and petit larceny; Officer Rivera was indicted for perjury in the first degree, burglary in the second degree, robbery in the second degree, grand larceny in the fourth degree, official misconduct, petit larceny, and other related crimes.

A key issue in this case is whether a guilty plea waives the defendant's *Brady* claims. Other intermediate appellate courts are in conflict here. The Second Department has said that there is a waiver (*People v Day*, 150 AD2d 595, 600, *lv denied* 74 NY2d 807), while the Third Department has said there is not (*People v Ortiz*, 127 AD2d 305). The Court of Appeals has not ruled on the issue.

I believe this Court should follow the Third Department's approach, which is also in line with Federal case law (*e.g., Tate*

*v Wood*, 963 F2d 20, 24 [2d Cir 1992]) and the decisions of the trial courts in this Court's jurisdiction (*e.g., People v Curry*, 164 Misc 2d 969). In general, a plea of guilty waives the right to argue claims that go to the issue of factual guilt (*People v Day, supra*, at 600). However, a *Brady* claim is about more than guilt or trial strategy, unlike other claims waived by a plea. "It is one thing for defendant and counsel to miscalculate the nature and persuasiveness of the prosecution's case. It is another for defendant and counsel to act without the benefit of information which is required to have been disclosed." (*People v Benard*, 163 Misc 2d 176, 181.)

A *Brady* violation undermines the validity of the plea itself. If exculpatory evidence was concealed from the defendant, his plea was arguably not voluntary, knowing and intelligent. To say that the plea prevents examination of its own validity is illogical. It is bootstrapping.

As for the merits of the defendant's *Brady* claim, I reject the majority's conclusion that the information was neither material nor in the control of the prosecution.

First of all, the alleged lack of personal knowledge of police misconduct on the part of the District Attorney's office is not significant. In *Kyles v Whitley* (514 US 419, 437), the United States Supreme Court held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."

Because the prosecutor's office has the ability to establish procedures that ensure that the police will communicate all relevant information to him, the prosecutor's lack of personal knowledge will not excuse his nondisclosure of information which is in the government's possession. "Since, then, the prosecutor had the means to discharge the government's *Brady* responsibility if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure fair trials" (*supra*, at 438).

Relying on *Kyles*, the Court of Appeals recently held that "[t]he mandate of *Brady* extends beyond any particular prosecutor's actual knowledge" (*People v Wright*, 86 NY2d 591, 598). The case depended on the credibility of the complainant, who alleged an assault, against that of the defendant, who said she was only defending herself against attempted rape. Following her conviction, she learned that the complainant had previ-

ously worked as an informant for the same police department that arrested her. Had she possessed this information at trial, she could have argued that the police who arrested her were biased because of their prior relationship with the complainant (*supra,* at 594-596). The Court found a *Brady* violation: even though the prosecutor had not personally known the exculpatory information, he had a duty to learn of any favorable evidence known to the police department which was involved in the case (*supra,* at 598).

Two trial court cases from New York County have attempted to define the scope of the ADA's duty to investigate. In *People v Curry* (164 Misc 2d 969, *supra*), the defendant was arrested for alleged drug possession. He protested his innocence and charged that the officers had lied and taken money from him, but eventually he pleaded guilty rather than engage in a credibility battle that he thought he would lose at trial. Afterwards, he learned that at the time of his plea the Official Corruption Unit of the New York District Attorney's office had been investigating the officers for, *inter alia,* shaking down drug dealers, reselling stolen drugs and stealing money from dealers (*supra,* at 970-971). For confidentiality reasons, this information had been withheld from the ADA who prosecuted the defendant. The court held that the defendant could not have been expected to make a specific request for such confidential information, and that the nondisclosure was grounds to vacate his guilty plea (*supra,* at 973). Significantly, though, in *Curry,* the People did not contest whether the exculpatory information was within their possession and control for *Brady* purposes, whereas they do in the instant case.

By contrast, in *People v Benard* (163 Misc 2d 176, 184, *supra*), the facts were similar to *Curry* but the result was different. The court held that when the exculpatory information is not directly related to the case at issue, and is not personally known to the ADA but is known to the same large law enforcement agency, the ADA's duty to seek out and disclose this material is not triggered unless the defendant specifically requests this type of information. The *Curry* court distinguished this case because the confidentiality factor was not present (*People v Curry*, 164 Misc 2d, at 973).

In the case at bar, as in *Curry,* the confidentiality of the investigation into Officers Townsend and Rivera was one reason why the information was not directly known to the ADA. Under these circumstances, I would apply *Curry's* interpretation of the People's duty to find the exculpatory evidence that is in the possession or control of law enforcement agencies.

Moreover, doubt exists as to the ADA's true ignorance of the exculpatory information. Before the defendant pleaded guilty, the ADA had heard that Officer Rivera was "up to his old tricks". Clearly, the ADA would not have understood this statement unless he knew that Officer Rivera habitually engaged in certain misconduct. This amount of knowledge should have triggered his obligation to investigate further. The Second Circuit has held that a prosecutor's negligent failure to discover exculpatory evidence can be the basis for a *Brady* violation (*United States v Seijo*, 514 F2d 1357, 1364 [prosecutor did not inform defense of prosecution witness's criminal record, in a case which turned on credibility of witness versus defendant, because the prosecutor negligently failed to read an FBI report on the witness]).

Taken as a whole, the material that the People failed to discover and disclose casts sufficient doubt on the credibility of the People's sole witnesses to create a *Brady* violation. "A prosecutor's duty of disclosing exculpatory material extends to disclosure of evidence impeaching the credibility of a prosecution witness whose testimony may be determinative of guilt or innocence" (*People v Baxley*, 84 NY2d 208, 213). A *Brady* violation has occurred when, "in the context of the entire trial, the omitted evidence creates a reasonable doubt that did not otherwise exist" (*supra,* at 214).

In the instant case, the People's only witnesses at the *Mapp* hearing were Officers Townsend and Rivera, both of whom were later convicted on various corruption charges, including perjury and illegal searches. There is no question that the officers acted unlawfully when they initially stopped and then chased the defendant. The court chose to believe the officers' testimony that the defendant subsequently displayed the gun in a manner that gave them independent probable cause to arrest him. Yet, if the defendant had had the impeachment evidence to present to the court at the *Mapp* hearing, he could have argued at the hearing that they fabricated this incident. It is certainly plausible that the court would have credited his word over that of the officers, the gun would have been suppressed and the entire case would have been dismissed.

The credibility of the officers at the *Mapp* hearing is far from a collateral issue, where the only admissible evidence of factual guilt depended on the officers' testimony that they discovered the gun because he pointed it at them, an allegation that the defendant has always denied (*see, People v Clausell*, 182 AD2d 132, 136, *lv denied* 81 NY2d 761 [evidence impeaching officer's

version of how drugs were discovered is material and exculpatory]). Any corroborating evidence, such as defendant's admitting possession at the preplea parole revocation hearing and the plea hearing, was completely derived from the officers' disputed search. More importantly, the fact that he has not denied possessing the gun is irrelevant, because the key issue is whether the incident that made *discovery* of the gun lawful even took place. Evidence tending to cast doubt on the officers' testimony about the legality of the search would be "highly material to the defense" (*People v Simmons*, 36 NY2d 126, 132). The instant case is distinguishable from our decision in *People v Vasquez* (214 AD2d 93, *lv denied* 88 NY2d 943), because in that case the allegedly corrupt officer's testimony merely corroborated the version of events testified to by another police witness.*

*Brady* is equally applicable when the officer whose testimony would have been impeached testified to the circumstances of the search and seizure at a *Mapp* hearing, rather than at trial (*see, People v Burney*, 169 Misc 2d 436, 439). Where the defendant is charged with a possessory crime, such that a favorable outcome on his suppression motion eliminates the need for a trial, the officer's account of the discovery of the evidence could not be more material to the issue of factual guilt.

The majority mistakenly points to the defendant's postarrest statements to the officers as proof that their testimony was not the only evidence of his guilt. If he had gone to trial, this would be the case, but that is not the issue here. The issue is that at the *Mapp* hearing, the only evidence that the gun was discovered lawfully—a prerequisite to the admissibility of the statements on which the majority relies—was the officers' testimony that the defendant pointed it at them. The aforementioned statements had nothing to do with this.

As noted above, a violation of the defendant's right to review exculpatory evidence in the People's possession casts doubt on whether his plea was voluntary, knowing and intelligent. Here, the evidence in question would have impeached the credibility of the People's only witnesses on a dispositive threshold issue in the case. The prosecutor was at best negligent in failing to discover and produce this evidence. This constitutional violation undermines the very validity of the plea itself.

---

* Moreover, the prosecution in *Vasquez* turned over all their reports of complaints against the officer; the *Brady* claim was based solely on secret bad acts known only to the officer himself, knowledge which we declined to impute to the People.

I would vacate the guilty plea and remand the matter for a new hearing at which the trial court would have the benefit of hearing the evidence regarding the credibility of the witnesses before reaching a decision.

WALLACH and RUBIN, JJ., concur with TOM, J.; ROSENBERGER, J. P., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered June 9, 1995, affirmed.