THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
KAREN T. ELY, Appellant.

Third Department, December 13, 1990

### APPEARANCES OF COUNSEL

*Douglas P. Rutnik (Thomas Marcelle* of counsel), for appellant.

*Sol Greenberg, District Attorney (George H. Barber* of counsel), for respondent.

### OPINION OF THE COURT

CASEY, J.

In March 1982, defendant and Robert Huntington were indicted on charges of murder in the second degree arising out of the strangulation death of defendant's ex-husband. Huntington pleaded guilty as charged and was the prosecution's chief witness at defendant's trial in 1983, at which defendant testified in her own behalf. The jury found defendant guilty of murder in the second degree, but the Court of Appeals reversed the conviction and ordered a new trial (68 NY2d 520). At defendant's second trial, Huntington was again the prosecution's chief witness and the jury again found defendant guilty of murder in the second degree, resulting in this appeal.

Defendant's first argument is that County Court erred in denying her request to charge that the testimony of Huntington must be viewed with caution and suspicion as he was an accomplice. The court limited its charge on accomplice testi-

mony to the cautionary instructions required by CPL 60.22 (1), which provides that "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." Defendant concedes that the court's charge was correct insofar as it instructed the jury as to the corroboration requirement of CPL 60.22, but claims that the additional requested language was necessary to instruct the jury how to view Huntington's testimony.

■ The inclusion of the requested language would not have been improper or inappropriate (see, 1 CJI [NY] 7.52, at 337; see also, People v Sherman, 156 AD2d 889, 891-892, lv denied 75 NY2d 970; People v Brown, 152 AD2d 701, lv denied 74 NY2d 894), but we hold that the inclusion of such language is not mandatory. Although New York courts have consistently viewed the testimony of an accomplice with suspicion and caution (e.g., People v Moses, 63 NY2d 299, 305; People v Kress, 284 NY 452, 459), they have not done so in the context of mandating that the jury be so charged. Rather, it has been said that the accomplice corroboration requirement arises out of, or is premised upon, the suspicion and caution with which the law views accomplice testimony (People v Cona, 49 NY2d 26, 35-36; People v Chernauskas, 137 AD2d 607, 609; People v Springer, 127 AD2d 250, 253, affd 71 NY2d 997). Thus, in People v Cona (supra, at 36) the court explained: "In short, the accomplice corroboration rule entails a legislative recognition that, as a result of these various pressures, both real and imagined, to which an informant may be subject, such testimony is somewhat suspect. At the same time, such testimony is often a necessary predicate for successful criminal prosecutions. Whatever the wisdom of the solution the Legislature has developed in order to resolve this dilemma, the rule is plain and must be properly applied by the courts."

The accomplice corroboration rule was properly applied in this case, and we agree with County Court that it was not necessary to instruct the jury as to the rationale underlying the rule. We also note that defendant is incorrect in her claim that the jury was not instructed how to view Huntington's testimony. The court charged the jury that Huntington was an interested witness and explained that in the case of an interested witness the jury had the right to determine whether "because of that fact, he or she might be led to testify to something other than the truth or to color his or her testimony".

■ Next, defendant argues that County Court erred in denying her motion to introduce her testimony from the first trial. Defense counsel informed the court that defendant intended to assert her 5th Amendment right, making her "unavailable" to testify. Thus, according to defendant, she was incapacitated within the meaning of CPL 670.10 (1) and, therefore, her testimony at the prior trial was admissible pursuant to that statute. Although we have held that a witness who refused to testify is considered to be unable to attend because of incapacity within the meaning of CPL 670.10 *(People v Muccia,* 139 AD2d 838, 839), the rule has never been applied to a defendant who refuses to testify on his or her own behalf. The Court of Appeals has counseled "against a construction that would extend CPL 670.10 well beyond the 'fair import' of its language" *(People v Ayala,* 75 NY2d 422, 429), and we conclude that defendant's claim is based upon such an extension. As we said in *People v Brockum* (88 AD2d 697), "[t]he Fifth Amendment privilege protects an accused only from being *compelled to testify against himself,* or otherwise *provide the State* with evidence of a testimonial or communicative nature" (emphasis supplied). The United States Supreme Court has recognized that " '[t]he element of compulsion or involuntariness was always an ingredient of the right' " *(South Dakota v Neville,* 459 US 553, 562, quoting Levy, Origins of the Fifth Amendment, at 328 [1968]). In short, "the touchstone of the Fifth Amendment is compulsion" *(Lefkowitz v Cunningham,* 431 US 801, 806).

In the case at bar, defendant sought to assert her 5th Amendment privilege after the close of the People's proof, at a point when the only party seeking her testimony was defendant herself. Defendant apparently claims that it was necessary to invoke her 5th Amendment privilege in order to protect her from being called to the stand by herself to testify on her own behalf. The illogic in this claim is readily apparent. Once the People presented legally sufficient proof to support a conviction of murder in the second degree, defendant was confronted with the tactical question of whether to testify on her own behalf. In these circumstances, there was no compulsion to provide the People with the evidence needed to convict her *(see, People v Jarrett,* 118 AD2d 657, 658, *lv denied* 67 NY2d 944) and, therefore, there was no need for defendant to invoke her 5th Amendment privilege in order to avoid testifying on her own behalf. Thus, we conclude that defendant was not unable to attend due to incapacity within

the meaning of CPL 670.10 and that County Court properly denied her motion to introduce her prior testimony. Although we would reach the same conclusion had defendant remained firm in her decision not to testify, the fact that she did testify when her ploy to introduce her prior testimony failed seems to support our conclusion that she was not incapacitated. Nor is there any merit in defendant's claim that she was compelled to testify by the denial of her motion. As noted above, she was under no compulsion to testify when she made the motion and the proper denial of her motion did not alter that fact.

Defendant next contends that the prosecutor impermissibly shifted the burden of persuasion by repeatedly asking defendant on cross-examination whether the testimony of the People's witnesses was false. The People concede that it is improper to ask questions which require a defendant to characterize prosecution witnesses as liars (see, People v Townsend, 134 AD2d 730, 731, lv denied 71 NY2d 903), but claim that since the prosecutor here never used the words liar or lying, the questions were not improper. This latter claim is patently meritless. Whether a defendant is asked if certain witnesses are lying or is asked if certain witnesses' testimony is false, the effect is the same. County Court therefore erred in overruling defendant's objections to this line of questioning, but in light of the evidence of defendant's guilt, and considering the charge given to the jury regarding the credibility of witnesses and the burden of proof, we conclude that the error was harmless (see, People v Montgomery, 103 AD2d 622).

Defendant also contends that the People were improperly permitted to bolster the testimony of their witness Harold Mosher. On direct examination, Mosher testified that he saw defendant and Huntington together on the night of the murder at a delicatessen and that they left together. On cross-examination, Mosher testified that he did not actually see defendant and Huntington leave together and that when questioned by the police some eight months later, he did not tell them that he saw Huntington on the night of the murder. Thereafter, during the direct examination of Police Officer Thomas Smith, the People asked Smith if, in the course of his investigation, he had spoken to Mosher. When Smith responded in the affirmative, he was asked, "And after speaking to Harold Mosher did there come a time that you participated in a conversation with Robert Huntington?" Over defendant's objection, Smith was permitted to answer "Yes".

According to defendant, the clear implication of this testi-

mony was that Mosher told Smith that he saw defendant and Huntington leave together on the night of the murder, thereby improperly bolstering Mosher's earlier direct testimony. Upon defendant's motion for a mistrial on this ground, County Court explained that it allowed the prosecutor's line of questioning of Smith in order to inform the jury of the chain of events and not to bolster Mosher's testimony. In support of her claim that Smith's testimony constituted improper bolstering, defendant cites *People v Holt* (67 NY2d 819, 821), where it was determined that it was error to permit a police officer to testify that he arrested a defendant after conferring with the only eyewitness to a stabbing death. Although it is reasonable in the case at bar to infer from Smith's testimony that his conversation with Mosher may have been a factor in his decision to speak to Huntington, this inference does not bolster, either directly or indirectly, Mosher's testimony that he saw defendant and Huntington leave the delicatessen together on the evening of the murder. We also note that before moving for a mistrial, defense counsel asked Smith if Mosher had mentioned Huntington (Smith answered, "Yes, he did."), a question the prosecutor avoided on direct examination.

As to defendant's final argument, that the admission of certain photographs deprived her of a fair trial, we find no reversible error *(see, People v Stevens,* 76 NY2d 833). The judgment should therefore be affirmed.

MAHONEY, P. J., YESAWICH, JR., LEVINE and HARVEY, JJ., concur.

Judgment affirmed.