■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERTO MARTE, Appellant. [615 NYS2d 678] —Judgment of the

Supreme Court, New York County (Clifford Scott, J.), rendered June 13, 1991, convicting defendant, after jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony offender, to concurrent indeterminate terms of imprisonment of from 12½ to 25 years and from 4½ to 9 years, respectively, modified, on the law and the facts and in the exercise of discretion, to the extent of reducing the sentence for criminal sale of a controlled substance in the third degree to an indefinite term of from 6 to 12 years and, except as so modified, affirmed.

Defendant was arrested at about 5:30 P.M. on April 11, 1990 in a "buy and bust" operation conducted on Manhattan's Lower East Side. He was approached by an undercover narcotics officer, who observed four persons standing in line waiting to talk to defendant, positioned on a street corner in front of a school. Defendant was seen to exchange something with each individual, who then quickly walked away. The undercover officer joined the line and heard defendant say such things as "how many" and "hurry up". When the officer reached the front of the line, he asked for "two" and was given two glassine envelopes of heroin marked "Try A Bag", paying $20 in pre-recorded buy money. He then notified the field team by radio that the transaction had been completed and gave a physical description of defendant.

Officer Mark Slender received the transmission, and located defendant as he was leaving the school yard on Suffolk Street. When Officer Slender made eye contact, defendant fled. After a chase and struggle, Officer Slender apprehended defendant, who was then positively identified by the undercover officer. The $20 in buy money, an additional $363 in cash, a Motorola beeper, 23 glassine envelopes marked "Try A Bag" and 18 more envelopes marked "Super Key" were recovered from defendant's person. It was later stipulated that these envelopes contained heroin.

As part of an omnibus pretrial motion, defendant sought a hearing on *Wade, Mapp* and *Dunaway* issues. Defense counsel claimed that the seizure of "personal property, narcotics and buy money from the defendant" violated defendant's constitutional rights. Defendant contended, as he did at trial, that he "committed no crime nor did the police have probable cause to search him". Defendant maintains that he was seized while merely "standing on Suffolk and Rivington Streets" waiting for his teenage son to come out of a bodega. Defendant's

moving papers assert that he "had not committed any crime nor was he committing a disturbance so as to attract attention to himself".

Defendant's suppression motion was properly denied without a hearing (CPL 710.60 [3]). His allegations do not dispute the sufficiency of probable cause for his arrest based on the earlier drug transaction with the undercover officer *(see, People v Mendoza,* 82 NY2d 415; *People v Dekle,* 192 AD2d 471, *lv denied* 81 NY2d 1072). Nor do the motion papers contain the factual particularity required by *People v Mendoza (supra,* at 425), in which the Court of Appeals cautioned that a suppression hearing is " 'not available merely for the asking' ". The bare assertion of innocence and the conclusory allegation that evidence has been illegally recovered are insufficient to warrant a hearing *(see, e.g., People v Coleman,* 191 AD2d 390, 392, *affd* 82 NY2d 415; *People v Covington,* 144 AD2d 238, *lv denied* 73 NY2d 890).

Defendant's contention that he was prejudiced by the admission of evidence of uncharged crimes is also without merit. Testimony by the undercover officer that defendant was engaged in drug dealing prior to being approached was elicited, in part, by defense counsel on cross-examination and was properly admitted as narrative information to explain why defendant was targeted by police *(People v Brown,* 200 AD2d 416, *lv denied* 83 NY2d 849; *People v Rivera,* 186 AD2d 504, 505). This testimony is also relevant to establish identity in rebuttal to defendant's contention that the police seized the wrong man *(see, People v Quinones,* 166 AD2d 330, *lv denied* 77 NY2d 881). Although the court did not conduct a full *Ventimiglia* hearing *(People v Ventimiglia,* 52 NY2d 350), defense counsel was on notice of the nature of the objectionable testimony, having challenged its admission during the course of opening statements *(see also, People v Battes,* 190 AD2d 625, 626, *lv denied* 81 NY2d 1011 [failure to conduct hearing harmless when evidence probative of intent]). Likewise, evidence that a beeper and $363 in cash were recovered from defendant serves to establish intent to sell the narcotics (Penal Law § 220.16 [1]; *see, e.g., People v Lopez,* 200 AD2d 525; *People v Chisolm,* 198 AD2d 109, *lv denied* 82 NY2d 923; *People v Martinez,* 182 AD2d 538, *lv denied* 80 NY2d 834). Thus, the probative value of this evidence outweighs its potential for undue prejudice *(People v Bradley,* 193 AD2d 385, 386, *lv denied* 81 NY2d 1070) by establishing elements of the crimes charged *(People v Alvino,* 71 NY2d 233, 241; *People v Molineux,* 168 NY 264, 293). Defendant's claim that the court

gave no curative instructions is unpreserved for appellate review since defendant never asked for limiting or curative instructions nor excepted to their absence *(People v Ayala,* 191 AD2d 381, *lv denied* 81 NY2d 1069).

During summations, defense counsel told the jurors that the People's case suffered from a "failure of proof", that his client had just been "hanging out" and that the prosecutor sought to imply guilt circumstantially from the evidence seized from defendant, a beeper and over $300 in cash. Counsel suggested that the inference of defendant's guilt was "based on the very, very, I say overt, classism and subtle racism." In the course of her summation, the prosecutor, over defense objection, stressed that defendant "had the beeper because it helped him in his work of selling heroin." Also over objection, she argued that defendant had been engaged in "selling drugs to the poor people of this city" and in "preying" upon them.

The prosecutor's references to the beeper and the money found on defendant constitute a fair response to defense counsel's portrayal of defendant as an innocent person mistakenly seized by police *(People v Morgan,* 66 NY2d 255, 259; *People v Ashwal,* 39 NY2d 105, 109) and do not comprise impermissible references to non-admissible evidence *(cf., People v La Fontaine,* 39 AD2d 734). The prosecutor's remark about preying on the poor might better have been left unsaid, but the reference was not "of such a quantity and repetitive nature that it exceeded all permissible bounds" so as to warrant reversal *(People v Correal,* 160 AD2d 85, 93). Notably, the objections raised by defense counsel were not accompanied by a motion for a mistrial nor by a request for curative instructions *(People v Medina,* 53 NY2d 951, 953), and the cumulative effect of the prosecutor's remarks did not operate to deprive defendant of a fair trial *(cf., People v Butler,* 185 AD2d 141).

The court's instructions on witness credibility, viewed in the context of the entire charge, adequately conveyed to the jurors that the credibility of the People's witnesses was as much in issue as that of defendant *(see, People v Levia,* 6 AD2d 961, *lv denied* 5 NY2d 708). It should be noted that defendant made no request for an interested witness charge with respect to any particular witness. However, under the circumstances, we find the sentence imposed for criminal sale of a controlled substance in the third degree to be excessive and modify accordingly.

Defendant's remaining arguments have been considered and

found to be without merit. Concur—Carro, Rubin and Williams, JJ.

Murphy, P. J., dissents in a memorandum as follows: If the only question in this case were one as to whether the sentence was excessive, I would concur in the majority memorandum reducing the sentence from 12½ to 25 years to 6 to 12 years. However, I cannot agree with the majority that the evidence of uncharged drug sales was relevant to the proof of any element of the single sale count charged. And, as I believe that this evidence, which was in the final analysis evidence of criminal propensity, may well have been prejudicial to the defendant, I find it necessary to dissent. I would reverse and remand for a new trial.