OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This case presents the question whether the People’s failure to inform the defendant that the complainant had
 
 *594
 
 previously operated as an informant for the local police department violated defendant’s right to due process. We conclude that the People were required to disclose this information pursuant to
 
 Brady v Maryland
 
 (373 US 83) and therefore reverse defendant’s conviction.
 

 Defendant met Fred Washington at the Bottom’s Up bar in Albany. They talked and had several drinks before going to defendant’s apartment. From this point forward, their testimony differed markedly.
 

 According to Washington, he and defendant had been hugging, kissing and holding hands at the bar. Upon arriving at her apartment, they entered defendant’s bedroom, where Washington undressed in her presence and placed his clothing on the floor next to the bed. Washington sat on the bed, and defendant left the bedroom. She returned wielding a knife, shouted at him, lacerated his penis and stabbed him in the chest. Washington then picked up his clothing, dressed and, after throwing a flower pot at the bedroom door, left the apartment with a radio. He flagged down a car and asked the driver to take him home. The driver, however, drove Washington to the hospital, over his protestations.
 

 According to defendant, as she prepared to leave the bar she noticed that her jacket was missing. Washington told her that his friend had it and offered to call him, but not from the bar. Defendant agreed to let him call from her apartment. At her apartment, she showed Washington the phone in the living room, and she went to the bedroom to hide her purse. While she was in the bedroom Washington entered, naked. As he approached her, Washington told defendant, 'T want to * * * you.” Fearing rape, defendant grabbed a knife she kept on her dresser and stabbed him in the groin and chest. She forced Washington out of the bedroom and called 911.
 

 Police Officer Douglas Walczak stated in his police report that he recovered a pair of boxer shorts, a shoe and a hat from defendant’s apartment that night,
 
 outside
 
 the bedroom. At trial, however, Walczak testified that the shoe and boxer shorts were found
 
 inside
 
 the bedroom, and that the hat was discovered at the threshold to the bedroom. Detective Sean Keane recorded in his police report that, on the evening of the incident, Washington had stated that he had been attacked by defendant
 
 as he entered her bedroom without any clothes.
 
 At trial, although Keane acknowledged the contents of his report,
 
 *595
 
 he was unable to recall whether Washington had in fact made that statement. During deliberations, the jury asked to hear Walczak’s testimony regarding where he found Washington’s clothing. Defendant was acquitted of the first-degree assault counts and convicted of one count of second-degree assault.
 

 Defendant subsequently filed a motion to vacate the judgment of conviction pursuant to CPL 440.10. In his affirmation, her new counsel alleged that, following defendant’s conviction, he learned that Washington was an informant for the Albany Police Department. Defendant argued that the People’s failure to disclose this information to the defense required a new trial on both newly discovered evidence grounds and
 
 Brady
 
 grounds. The People did not dispute defendant’s factual allegation that Washington had acted as an informant for the Albany Police Department on prior occasions. Instead, they responded that Washington was not an informant "in this case,” and that the trial prosecutor had no personal knowledge of prior instances in which Washington provided information to the police.
 

 The motion court summarily denied defendant’s motion, holding that Washington’s status as a police informant did not constitute newly discovered evidence. Defendant appealed from both the denial of her CPL 440.10 motion and the judgment of conviction, and the Appellate Division affirmed. Neither the motion court nor the Appellate Division addressed whether Washington’s history as a police informant constituted
 
 Brady
 
 material. Because we conclude it does, we now reverse.
 

 In
 
 Brady v Maryland
 
 (373 US 83), the Supreme Court held that the prosecution has an affirmative duty to disclose to the defense evidence in its possession that is both favorable to the defense and material to guilt or punishment. New York has long recognized this prosecutorial duty
 
 (see, e.g., People v Savvides,
 
 1 NY2d 554), and the failure to disclose
 
 Brady
 
 material violates a defendant’s constitutional right to due process.
 

 As a preliminary matter, defendant sufficiently apprised the motion court of the nature of her
 
 Brady
 
 claim by urging that Washington’s newly discovered status as a police informant was exculpatory material that should have been disclosed in response to her pretrial request for all
 
 Brady
 
 and impeachment material, citing
 
 Giglio v United States
 
 (405 US 150) and
 
 United States v Bagley
 
 (473 US 667). Having failed to
 
 *596
 
 dispute defendant’s factual allegation that Washington operated as a police informant, the People have impliedly conceded the truthfulness of that allegation
 
 (see, e.g., People v Ciaccio,
 
 47 NY2d 431, 438;
 
 see also, People v Gruden,
 
 42 NY2d 214, 216 ["(n)ormally what is not disputed is deemed to be conceded”]). Consequently, if Washington’s status as a police informant constituted
 
 Brady
 
 material, the trial court was obligated to grant defendant’s CPL 440.10 motion
 
 (see,
 
 CPL 440.30 [3];
 
 People v Gruden, supra,
 
 at 215-216).
 

 Manifestly, Washington’s status as a police informant was evidence favorable to the defense here. Specifically, the reports prepared by Detective Keane and Officer Walczak confirmed defendant’s claim that Washington was already undressed when he entered her bedroom. Nevertheless, at trial both officers supported Washington’s version of events— Walczak contradicted his report and testified that Washington’s boxer shorts and shoe were discovered inside defendant’s bedroom, and Keane could no longer recall whether Washington had stated that he entered defendant’s bedroom without any clothing. Had defendant been armed with the knowledge that Washington was an informant for the same police department that employed Keane and Walczak, she could have presented the jury with a motive for them to favor Washington. Like evidence tending to affect credibility, evidence establishing such a motive for prosecution witnesses to corroborate the complainant falls within the ambit of the
 
 Brady
 
 rule
 
 (see, Giglio v United States,
 
 405 US 150, 154,
 
 supra; People v Novoa,
 
 70 NY2d 490, 496). Additionally, that Washington had previously operated as a police informant would have provided the defense with an explanation for the decision by the police to disbelieve, and subsequently to arrest, defendant — who promptly notified 911 following the incident — as opposed to Washington.
 

 The People’s failure to disclose this favorable evidence to the defense requires reversal, however, only if the evidence was material. Defendant argues that her pretrial request for "any deals, promises or agreements entered into by the People or any agent thereof and any prosecution witness” encompassed the giving of information by a prosecution witness to an agent of the People and implicitly included agreements unrelated to defendant’s case. Thus, defendant contends that it constituted a specific request for the undisclosed evidence at issue, thereby triggering the less stringent "reasonable possibility” materiality standard articulated in
 
 People v Vilardi
 
 (76
 
 *597
 
 NY2d 67). Even assuming that this is not a "specific request” case, however, the undisclosed evidence must be deemed material because there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different
 
 (People v Chin,
 
 67 NY2d 22, 33;
 
 People v Smith,
 
 63 NY2d 41, 67,
 
 cert denied
 
 469 US 1227).
 

 The outcome of this case turned on whether the jury believed Washington’s account of an unprovoked attack or defendant’s claim that Washington entered the bedroom naked planning to rape her. Whether Washington undressed inside or outside the bedroom constituted a critical issue in this close credibility contest. Washington’s status as a police informant provided the defense with an explanation for Keane’s and Walczak’s switch to a version of the facts that supported Washington’s contention that he undressed
 
 inside
 
 the bedroom. Tellingly, during deliberations the jury focused on this aspect of Walczak’s trial testimony — it asked for a readback of his testimony regarding where Washington’s clothing was discovered.
 

 Also of central importance to the defense in this case was the argument that Washington’s reluctance to go to the hospital or the police after he was allegedly brutally victimized by defendant evidenced his consciousness of guilt and undermined his credibility. In summation, the prosecutor explained Washington’s behavior by arguing that, because of his criminal record, Washington did not "expect justice from the system”:
 

 "[M]aybe [Fred Washington] didn’t want to go to the hospital because he’s thinking the cops are going to think I did something wrong, this looks bad. You know, I didn’t do anything but hey, the cops know me and maybe once a criminal, always a criminal, and you know, I didn’t do anything, but hey, I’ve done things in the past
 

 * * *
 

 "You know, I’ve been on the other side of the criminal justice system. I’ve been arrested and
 
 the cops aren’t my friends”
 
 (emphasis added).
 

 Evidence that Washington had, in fact, provided the police with information on prior occasions would have effectively refuted the prosecutor’s proffered justification for Washing
 
 *598
 
 ton’s behavior. Indeed, had the jury been aware that Washington had a relationship with the local police, his efforts to circumvent police discovery might have appeared even more suspicious.
 

 Under these circumstances, Washington’s history as a police informant was both favorable and material to the defense, and the People’s failure to disclose this information to the defense violated defendant’s constitutional right to due process. The People’s reliance in their opposition papers on the trial prosecutor’s lack of personal knowledge regarding any instances in which Washington had operated as an informant is unavailing. The mandate of
 
 Brady
 
 extends beyond any particular prosecutor’s actual knowledge
 
 (see, e.g., Giglio v United States,
 
 405 US 150,
 
 supra
 
 [nondisclosure of promise made to witness by another prosecutor in trial prosecutor’s office, which promise was not known to trial prosecutor]). Furthermore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police”
 
 (Kyles v Whitley,
 
 514 US —, 115 S Ct 1555, 1567). The People therefore were not relieved of their obligation to turn over
 
 Brady
 
 material by the trial prosecutor’s failure to discover that the police were in possession of exculpatory information
 
 (see, People v Simmons,
 
 36 NY2d 126, 132 ["(n)egligent, as well as deliberate, nondisclosure may deny due process”]).
 

 In light of our conclusion that the People’s nondisclosure of Washington’s status as a police informant violated defendant’s right to due process, we need not reach defendant’s remaining contentions.
 

 Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed without prejudice to an application by the People for leave to resubmit the charge of , assault in the second degree
 
 (People v Mayo,
 
 48 NY2d 245).
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.