■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBIN TELLIER, Respondent. [707 NYS2d 469] —Appeal by the People from an order of the Supreme Court, Queens County (LeVine, J.), dated September 14, 1998, which granted the defendant's motion pursuant to CPL 440.10 to vacate a judgment of the same court, rendered April 2, 1992, convicting him of grand larceny in the second degree, grand larceny in the third degree, burglary in the third degree, criminal mischief in the second degree (two counts), unauthorized use of a motor vehicle in the first degree, and conspiracy in the fourth degree.

Ordered that the order is reversed, on the law, the motion is denied, and the judgment is reinstated.

The defendant moved on various grounds pursuant to CPL

440.10 to vacate his conviction. The Supreme Court categorized the defendant's claims as trial errors, a *Rosario* violation (*see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866), and a *Brady* violation (*see, Brady v Maryland,* 373 US 83), granted the motion, and vacated the defendant's conviction based on the alleged *Brady* violation.

Specifically, the court concluded that the prosecutor failed to disclose that a witness in the trial, referred to hereafter as C.S., was cooperating with Federal authorities in connection with a possible criminal action to be commenced against the defendant for racketeering and that C.S. had "implicitly entered into a *quid pro quo* agreement with Federal authorities." The court further concluded that, under either the "reasonable possibility" or "reasonable probability" standard (*see, People v Vilardi,* 76 NY2d 67), the result of the trial would have been different if this information had been disclosed, and therefore the defendant was entitled to a new trial. We reverse.

A prosecutor is under a duty to disclose the existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, and to correct any misstatements by a witness concerning the nature of the promise (*see, People v Steadman,* 82 NY2d 1; *People v Novoa,* 70 NY2d 490). This obligation of disclosure "arises from the fact that the prosecutor and the witness have reached an understanding in which the witness's cooperation has been exchanged for some quid pro quo on the part of the prosecutor" (*People v Novoa, supra,* at 497).

The evidence in the record establishes that the United States Attorney's Office did not enter into a cooperation agreement with C.S. until October 1992, over six months after the defendant's trial. In that agreement, C.S. agreed to testify against the defendant in any Federal criminal racketeering action and to plead guilty to a Federal conspiracy charge in exchange for a promise that he would not be prosecuted for other disclosed crimes and that his cooperation would be disclosed to the Federal Sentencing Judge. Although C.S. had talked to Federal prosecutors prior to the defendant's trial, when Federal charges against the defendant were under consideration, the evidence fails to establish that, at the time of the defendant's trial, there was an explicit or implicit understanding that C.S. would receive a benefit from Federal prosecutors in exchange for his cooperation.

Even assuming that C.S. had an informal cooperation agreement with Federal prosecutors at the time of the defendant's

trial, we are not persuaded that such an agreement would constitute exculpatory evidence with respect to the State prosecution (*see, People v Sibadan,* 240 AD2d 30; *cf., People v Wright,* 86 NY2d 591). The defendant offered no proof that Federal prosecutors promised a benefit to C.S. based on his testimony in the State trial. Furthermore, in order to prevail on his motion, the defendant was required to establish that there was, at least, a "reasonable possibility" that the outcome of his trial would have been different if the agreement had been disclosed (*People v Wright, supra; see, People v Vilardi, supra*).

The defendant failed to meet that burden. There was overwhelming evidence of the defendant's guilt. In addition to the testimony of C.S., the evidence included audiotape recordings of conversations of C.S. with the defendant, and testimony by a police officer who observed the defendant in the car used to flee the scene of the crime. Moreover, the jury was aware that C.S. was testifying pursuant to a cooperation agreement he made in 1990 with the Queens County District Attorney's office in which he agreed to testify against the defendant in exchange for, *inter alia*, a promise that he would not be prosecuted for his role in 17 prior burglaries. Accordingly, any evidence regarding a Federal cooperation agreement for the purposes of impeaching the testmony of this witness would have been cumulative (*see, People v Sibadan, supra*).

Contrary to the defendant's contention, the People are not collaterally estopped from litigating the *Brady* issue by our decision in *People v Moustakis* (226 AD2d 401), a related criminal proceeding for witness-tampering in which C.S. also testified. In *People v Moustakis,* we did not reach the issue of whether the nondisclosure of the implicit cooperation agreement between C.S. and Federal authorities constituted a *Brady* violation.

The Supreme Court properly denied the defendant's motion insofar as it was based on a *Rosario* violation. The defendant contended that the People withheld some of the pages of notes from a debriefing session that C.S. had with Federal authorities prior to the State trial. We held previously that these undisclosed notes constituted *Rosario* material in connection with the unrelated witness-tampering trial in which C.S. testified (*see, People v Moustakis, supra*), because the information could have been used to impeach the credibility of C.S. Since the direct appeal of Moustakis was pending and undecided, we applied the then applicable rule of *per se* reversible error in affirming the order vacating the conviction (*see, People v Moustakis, supra*).

However, in *People v Machado* (90 NY2d 187), the Court of Appeals held that a defendant seeking to vacate a judgment pursuant to CPL 440.10 on *Rosario (People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866) grounds, either preappeal or postappeal, must demonstrate that nondisclosure of the material was prejudicial. In the case at bar, therefore, the defendant was required to establish that nondisclosure of the *Rosario* material was prejudicial. We agree with the Supreme Court that there is no "reasonable possibility that the failure to turn over [the subject] *Rosario* material contributed to the verdict against him" *(People v Jackson,* 78 NY2d 638, 650). The information regarding the criminal history of C.S. in the subject notes was cumulative, and the defense counsel questioned C.S. about his involvement in numerous crimes.

We also agree with the Supreme Court that the other issues raised by the defendant, which the court categorized as trial errors, did not warrant reversal of his conviction.

The defendant's remaining contention is without merit. O'Brien, J. P., Florio and H. Miller, JJ., concur.

Friedmann, J., dissents and votes to affirm the order appealed from with the following memorandum: I respectfully dissent and would affirm the order of the Supreme Court, which granted the defendant's motion pursuant to CPL 440.10, vacated his conviction, and ordered a new trial. It is well settled "that the 'existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under *Brady* principles' " *(People v Novoa,* 70 NY2d 490, 496, quoting *People v Cwikla,* 46 NY2d 434, 441). Under the particular circumstances of this case, I agree with the Supreme Court that the record establishes that one of the People's witnesses at trial, C.S., had effectively reached an understanding with Federal prosecutors "in which [his] cooperation [had] been exchanged for some *quid pro quo* on the part of the [Federal] prosecutor" *(supra,* at 497). Such an understanding constituted exculpatory evidence which should have been disclosed to the defendant *(see, People v Novoa, supra,* at 497; *People v Cwikla, supra,* at 442). Moreover, it is reasonably possible that the result of the trial would have been different had the People disclosed this information to the defendant *(see, People v Vilardi,* 76 NY2d 67, 77).