■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PEDRO GARCIA, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BETZAYDA MELENDEZ, Respondent. [848 NYS2d 137]—

Order, Supreme Court, Bronx County (Steven Lloyd Barrett,

J.), entered November 2, 2006, which granted defendants' CPL 440.10 motions to vacate judgments, rendered November 15, 2002, convicting defendants, after a jury trial, of kidnapping in the second degree and endangering the welfare of a child, and imposing sentence, unanimously affirmed.

The court correctly found that the People violated their obligation to turn over material favorable to the defense (*see Brady v Maryland*, 373 US 83 [1963]) and that defendants were thereby prejudiced. The court properly found that the prosecution wilfully suppressed evidence, in their possession, from flight attendants that contradicted the complainant's claim that she created a disturbance and vociferously protested to the attendants that she was being taken against her will by defendant Melendez on a flight to Puerto Rico. In opposing defendants' motions to vacate, the People did not dispute defendants' allegations, supported by the affidavits of all of the flight attendants, that each of the flight attendants had informed the prosecution prior to trial that no such incident had taken place. To the contrary, the Assistant District Attorney who tried the case expressly acknowledged that he had spoken by telephone or in person with each flight attendant prior to the trial, and that after being told of an alleged incident in which a 13-year-old child aboard the flight "cried out for help, and physically grabbed one of the flight attendants, each flight attendant responded that if the incident had happened that way, she would have remembered it." With respect to the one flight attendant he interviewed in person prior to trial, the Assistant District Attorney affirmed that his "recollection of this interview is that generally, [she] insisted that no such incident could have occurred on any flight she worked because, if it had, she would have remembered it."

The suppressed evidence was clearly favorable to the defense as it was inconsistent with a fundamental aspect of the People's case, namely, that Leslie, the then-13-year-old complainant, was physically restrained by defendants and forced onto a plane by Melendez. The People's theory was not that the child had acquiesced in being transported but that such acquiescence was ineffective because she lacked legal capacity. Instead, the People's case was tried on the theory that defendants used physical force, and that the child actively resisted. Accordingly, it is unnecessary to decide whether, and under what circumstances, kidnapping can be committed with an underage victim's acquiescence (*see* Penal Law § 135.00 [1] [b]). The testimony of the flight attendants would have provided a markedly different account of the events on the airplane, and would have significantly impeached the complainant's credibility.

With respect to the issue of prejudice, we adopt the reasoning of the trial court in the comprehensive written opinion it issued in granting defendants' motions to vacate. As Justice Barrett stated: "[T]his meaningful impeachment evidence may well have proven determinative to the evaluation of a case in which serious doubts coexisted with the chilling accusations and in which the key witness' credibility was under attack. Leslie's account of how she was kidnapped and held hostage in the very building where she lived with her mother, her mother's boyfriend, and her three siblings presented an unusual scenario, wherein 'kidnappers' choose to 'hide' their victim for a full year just two floors from the apartment where her family lived. The question of motive similarly is baffling. According to her own testimony, Leslie had a perfectly amicable relationship with the Garcias, had had no prior disputes with them, and considered the Garcia's [sic] daughter to be her very best friend. Further, during the entire twelve months that Leslie was held captive, no ransom demands were received and no one heard a word from the kidnappers. Leslie's account of her year-long captivity in the boiler room also had curious aspects. She claimed that escape was impossible because the door was secured by four locks and the windows were too high to reach; yet the managing agent for the building testified that in his frequent visits, he never saw Leslie in the boiler room nor any indication that anyone was being held hostage there, and that in compliance with New York City fire code regulations, the boiler room door had no locks, and could be opened quite easily from the inside. Leslie explained that her cries for help proved unavailing because of the loud noise made by the operating boiler, but when asked why she did not scream when the boiler was not operating, Leslie offered the excuse that she had a sore throat. Even her story of her idyllic life was undermined by both the testimony of her own mother and by records secured from both the Board of Education and other city agencies."

We reject the People's claim that the suppressed evidence was available to the defense. The People disclosed nothing more than the flight attendants' names, with no contact information or indication as to what information they possessed. Furthermore, these names were buried in a voluminous amount of discovery provided shortly before trial, and were not identified as *Brady* material. This type of disclosure did not satisfy the People's obligation (*see Banks v Dretke*, 540 US 668, 695 [2004] ["Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed"]; *see also People v Davis*, 81 NY2d 281 [1993]; *United*

*States v Gil,* 297 F3d 93, 105-106 [2d Cir 2002]; *Leka v Portuondo,* 257 F3d 89, 100-103 [2d Cir 2001]).

We note that one of the flight attendants, the one the trial prosecutor had personally interviewed, was listed as a potential witness, and thus the defense was given reason to believe that the prosecutor believed that the flight attendant would testify favorably for the prosecution. At bottom, however, it is irrelevant whether defense counsel could have discovered or should have known that the flight attendants would contradict the complainant's account of the flight. The prosecution's constitutional and ethical obligations are independent obligations. The only relevant point here is that the prosecution did know of and did not disclose this significant impeachment evidence.

It is disquieting that the People's brief refers to this failure to disclose as "an arguable lapse of preferred practice." This was a flagrant violation by the prosecutor of his constitutional and ethical obligations. It is all the more disturbing given one of the prosecutor's arguments on summation. One of the defense attorneys argued on summation that the fact that none of the flight attendants had testified supported an inference that they would not support the complainant's account of the flight. In response, the prosecutor argued as follows: "Who else do we have, airport security, airplane stewardess. Why weren't there people brought in. Think about it, ladies and gentlemen, how many times have we seen, just on our daily experience, kids are yelling, screaming in the street, you pay it no mind. Now I'm not going to go into the airport and security, there's no reason to do that in this situation but just understand how in these circumstances you're tired, this is an early flight, a lot of people to check with, kids yelling and screaming, just move on, just move on. Again, another person, not my business, someone else will take care of it. That's how this works. This is a conspiracy of passivity. No one gets involved, no one wants to be bothered." As Justice Barrett aptly put it, "this argument was, most charitably, disingenuous. The prosecutor's own silence with respect to the *Brady* material is the more conspicuous and critical passivity found on this record." In this regard, finally, it also is disquieting that the People assert on this appeal that Justice Barrett's condemnation of this argument "fails to take into account that the proposed testimony of the flight attendants actually would have *supported* [the] argument." No rational view of the affidavits from the flight attendants supports this assertion.

The People's claim that the court should have used the "reasonable probability" standard for assessing prejudice (*see People v Vilardi,* 76 NY2d 67, 76-78 [1990]) is unpreserved (*see People*

*v Callendar*, 90 NY2d 831 [1997]), and this lack of preservation on the part of the prosecution places the issue beyond our powers of review (*People v Chavis*, 91 NY2d 500, 506 [1998]). Were we to find otherwise, we would reject this claim. The court correctly applied the "reasonable possibility" standard since the defense made a specific request for *Brady* material (*see People v Scott*, 88 NY2d 888, 890-891 [1996]). In any event, we find that defendants demonstrated prejudice under either standard, and are entitled to a new trial (*see People v Wright*, 86 NY2d 591 [1995]).

We have considered and rejected the People's remaining claims. Concur—Saxe, J.P., Friedman, Marlow, Sullivan and McGuire, JJ.