People v Chacon (2023 NY Slip Op 06220)

People v Chacon

2023 NY Slip Op 06220

Decided on December 05, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 05, 2023

Before: Kern, J.P., Gesmer, Moulton, Kennedy, Higgitt, JJ. 

Ind. No. 3409/16 Appeal No. 1145-1145A Case No. 2019-3956 

[*1]The People of the State of New York, Respondent,
v
Luis Chacon, Defendant-Appellant.

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Alma D. Gonzalez of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Matthew B. White of counsel), for respondent.

Judgment, Supreme Court, Bronx County (Martin Marcus, J.), rendered January 22, 2019, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, unanimously affirmed. Order, same court and Justice, entered on or about October 3, 2022, which denied defendant's CPL 440.10 motion to vacate the judgment, unanimously affirmed.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). We find no basis to disturb the jury's credibility determinations. The jury had ample grounds to conclude that defendant was the man depicted in the surveillance video shooting the victim. The jury had an opportunity to observe defendant and view photographs of his distinctive tattoos, and was able to compare defendant's appearance and tattoos to that of the shooter. Two witnesses also placed defendant at the scene shortly before the shooting and identified defendant in the video. In addition, another witness testified to incriminating statements made by defendant.
Defendant did not preserve his argument that the identification by one of the witnesses should have been suppressed on the ground that police discussions with him regarding his familiarity with defendant prior to showing him the video rendered the identification procedure unduly suggestive (see People v Salinas, 151 AD3d 659, 659 [1st Dept 2017], lv denied 30 NY3d 953 [2017]), and we decline to consider it in the interest of justice. As an alternative holding, we find no undue suggestiveness. The evidence presented at the suppression hearing established that the discussions regarding the witness's familiarity with defendant took place shortly before the witness's identification of defendant in a photo array, which defendant does not challenge. That discussion occurred a year and a half before the witness was shown the video, and nothing indicated that the police made any comments suggesting that defendant would be portrayed in the video prior to showing it to the witness.
The court providently exercised its discretion in granting the People's motion to photograph defendant's tattoos pursuant to former CPL 240.40(2)(b) (repealed by L 2019, ch 59, part LLL, § 1). While the People did not make their application within 45 days of the arraignment (see formerCPL 240.90[1]), and did not establish good cause for the delay, the delay itself did not cause defendant any prejudice (see People v Lewis, 44 AD3d 422, 422-423 [1st Dept 2007], lv denied 9 NY3d 1035 [2008]; see also People v Kluge, 180 AD3d 705, 709 [2d Dept 2020]). We reject defendant's argument that photographing his tattoos implicated his constitutional rights. In any event, any error was harmless (see Lewis, 44 AD3d at 423).
The court properly denied defendant's CPL 440.10 motion to vacate the judgment of conviction. The People did not violate Brady v Maryland (373 US 83 [1963]) by failing to [*2]disclose that one of the cooperating witnesses had entered into an agreement with authorities to be transferred to a different facility prior to his testimony. The transfer agreement did not constitute exculpatory evidence. The witness, who was in federal custody on an separate matter, was relocated for safety reasons, and there was no indication that the prosecutor in this case was involved in the transfer or that the witness was transferred in exchange for his testimony in this state trial (see People v Giuca, 33 NY3d 462, 475 [2019]; People v Tellier, 272 AD2d 347, 348-349 [2d Dept 2000]). Even assuming the People were required to disclose the information, there was no reasonable possibility that the production of the transfer agreement would have resulted in a different verdict, as it was largely cumulative of other impeachment evidence presented at trial (see Giuca, 33 NY3d at 476-477; People v Tripathy, 187 AD3d 515, 516 [1st Dept 2020], lv denied 36 NY3d 1101 [2021]).
The transfer agreement did not constitute newly discovered evidence (see CPL 440.10[1][g]), for the same reasons that it would have been cumulative impeachment evidence and would not have changed the outcome of the trial (see People v Velazquez, 143 AD3d 126, 131 [1st Dept 2016], lv denied 28 NY3d 1189 [2017]; People v Quan Hong Ye, 92 AD3d 407, 407 [1st Dept 2012], lv denied 19 NY3d 866 [2012]). The other purported newly discovered evidence, that the witness had provided inaccurate information to the authorities in the federal matter, would also have been cumulative impeachment evidence and would not have resulted in a different outcome.
The court properly determined that defendant received effective assistance of counsel under both the state and federal standards (see People v Benevento, 91 NY2d 708, 713-714 [1998]; Strickland v Washington, 466 US 668 [1984]). Defendant did not show that any of counsel's alleged deficiencies fell below an objective standard of reasonableness, or that, viewed individually or collectively, they deprived defendant of a fair trial or affected the outcome of the case.
We perceive no basis for reducing the sentence. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 5, 2023